UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAYGE R. CARLIN,

        Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

19-CV-6312-LJV
DECISION & ORDER

On April 29, 2019, the plaintiff, Payge R. Carlin, brought this action under the Social Security Act. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On November 19, 2019, Carlin moved for judgment on the pleadings, Docket Item 12; on January 17, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 14; and on February 6, 2020, Carlin replied, Docket Item 15.

For the reasons that follow, this Court grants Carlin's motion in part and denies the Commissioner's cross-motion.[1]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Carlin argues that the ALJ erred in two ways. *See* Docket Item 12-1 at 10. She first argues that "the ALJ claimed to afford significant weight to [the] opinion [of Harbinder Toor, M.D.,] but failed to explain why limitations in [the ALJ's] finding were less severe than those found by Dr. Toor." *Id.* She also claims that the ALJ "failed to take any action to recontact [Philip M. Schirck, M.D.,] for additional information regarding his illegible records and made inaccurate assumptions about the content of the illegible records." *Id.* Because of these errors, Carlin says, the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence. *Id.* This Court agrees that the ALJ erred and remands the matter to the Commissioner.

2

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). That evaluation requires the ALJ to resolve "[g]enuine conflicts" among the sources. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted). And before an ALJ may deny a claimant's application, he must "confront the evidence in [the claimant's] favor and explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016).

"[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).

In addition to acceptable medical opinions, an ALJ also must consider the opinions of "other sources"—such as nurse practitioners—but is "free to discount" such opinions "in favor of the objective findings of other medical doctors." *Id.* at 108-09. The ALJ should, however, explain the weight assigned to the opinions of "other sources" that "may have an effect on the outcome of the case," 20 C.F.R. § 404.1527(f)(2), in a way that "allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006).

Here, the ALJ found that Carlin has the RFC

> to perform light work . . . except that [she] would require a sit/stand option exercisable at will, but would need to be on task any sit/stand period; [she] is limited to frequent handling and fingering; [she] is limited to occasional stooping, kneeling, crouching and crawling; she is limited to occasional climbing of stairs/ramps, but should not climb ladders, ropes or

3

> scaffolding; she should not be exposed to unprotected heights; she should avoid concentrated exposure to dust, fumes, gases and other pulmonary irritants[.]  She is limited to a low-stress work environment, defined as involving only simple, routine tasks; only basic work-related decisions; rare changes in the work setting; only occasional interaction with the public; only frequent interaction with coworkers and supervisors.  [She] may be off task for up to 5% of an 8-hour workday.

Docket Item 7 at 36.  In formulating Carlin's RFC, the ALJ gave "significant weight" to the opinion of Dr. Toor, who conducted a physical consultative examination of Carlin in February 2016.  *Id.* at 38, 41.  "Dr. Toor indicated that [Carlin] experienced 'mild' to 'moderate' difficulties with physical tasks such as walking/standing, sitting, pushing/pulling, and using the hands, with 'moderate to marked' difficulties lifting and bending[.]"  *Id.* at 38.  The ALJ found that "while stated somewhat vaguely, [this opinion] is not obviously inconsistent with Dr. Toor's own examination findings."  *Id.*

Although the ALJ purported to give Dr. Toor's opinion "significant weight," *id.* at 41, he failed to "provide an 'accurate and logical bridge' between" that opinion and his RFC determination, *see Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)).  More specifically, the ALJ did not explain how Carlin could perform light work—which the ALJ acknowledged "involves lifting/carrying up to 20 pounds occasionally and 10 pounds or less frequently"—notwithstanding her "'moderate to marked' difficulties lifting."  *See* Docket Item 7 at 38, 40.  Similarly, the ALJ did not explain why he found that Carlin could "occasional[ly] stoop[ ], kneel[ ], crouch[ ] and crawl[ ]," despite Dr. Toor's opinion that Carlin had "'moderate to marked' difficulties . . . bending."  *See id.*  Nor did the ALJ explain how Carlin could perform work that involves "frequent handling and fingering" despite having

"'mild' to 'moderate' difficulties . . . using the hands." *See id.* Without such explanations, this Court is unable to "assess the validity of the agency's ultimate findings and afford [Carlin] meaningful judicial review." *See Craft*, 539 F.3d at 673 (quoting *Young,* 362 F.3d at 1002).

Indeed, the ALJ seemed to acknowledge the discrepancy, noting that his findings were only "fairly consistent with Dr. Toor's opinion" even though he gave that opinion "significant weight." *See* Docket Item 7 at 41. In light of that admission, it was incumbent on the ALJ to explain which of Dr. Toor's opinions he credited, which he discounted, and why. Likewise, it was incumbent on him to explain how his RFC findings were consistent with Dr. Toor's opinion—or if they were not, to explain why and to ground the RFC in other medical opinions. Simply giving "significant weight" to an opinion and then saying that the RFC is "fairly consistent" with that opinion misses the mark.

The Commissioner argues that the ALJ's RFC determination is indeed consistent with Dr. Toor's opinion. *See* Docket Item 14-1 at 14-16. For example, the Commissioner asserts that "[a] moderate limitation is not inconsistent with a finding that an individual can engage in frequent, but not constant activity." *Id.* at 14 (quoting *Jennifer Lee W. v. Berryhill*, 5:18-CV-64, 2019 WL 1243759, at *5 (N.D.N.Y. March 18, 2019)). But courts in this district have found mild to moderate hand limitations to be inconsistent with the ability to frequently reach, handle, and finger. *See McFarland-Deida v. Berryhill*, No. 17-CV-6534-FPG, 2018 WL 1575273, at *4 (W.D.N.Y. Apr. 2, 2018) ("[T]he Court finds that the ALJ erred when he afforded 'significant weight' to Dr. Toor's opinion that McFarland-Deida had mild hand limitations, but failed to explain his

finding that McFarland-Deida can nonetheless frequently reach, handle, and finger bilaterally."); *Moe v. Colvin*, No. 1:15-CV-00347(MAT), 2017 WL 6379239, at *6 (W.D.N.Y. Dec. 14, 2017) ("[T]he ALJ gave Dr. Balderman's opinion 'significant weight,' but his limitation regarding Plaintiff's use of his hands repetitively is not necessarily compatible with the ALJ's finding that Plaintiff can frequently handle and finger, i.e., do such activities for up to one-third to two-thirds of an 8-hour day (up to 2.64 to 5.36 hours).").

More significantly, the point is not whether courts have found certain activities consistent with certain medical findings; the point is that the ALJ did not connect the dots between Dr. Toor's opinion and the RFC. In other words, even if Dr. Toor's opinion *could be* reconciled with the ALJ's RFC determination, the problem is that the ALJ did not do that here. And so the Court has no idea of whether Dr. Toor would agree with the conclusion in the RFC that Carlin can "frequent[ly] handl[e] and finger[ ]," Docket Item 7 at 36, or "occasional[ly] stoop[ ], kneel[ ], crouch[ ] and crawl[ ]," *id.*, or "lift[ ]/carry[ ] up to 20 pounds occasionally and 10 pounds or less frequently," *id.* at 40. Indeed, the Court has no way of knowing whether any examining physician—or any other medical professional, for that matter—would agree with the ALJ's RFC formulation. And without knowing that, the Court has no way of evaluating whether the RFC is based on medical opinions or only on the ALJ's lay opinion. *See Thomas v. Comm'r of Soc. Sec.*, No. 17-CV-723-HBS, 2019 WL 2295400, at *2 (W.D.N.Y. May 30, 2019) (explaining that "[a]lthough the RFC determination is an issue reserved for the [C]ommissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare

6

medical findings," and, therefore, "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence").

For all those reasons, the Court finds that the ALJ erred in his RFC determination and remands so that the ALJ can address the deficiencies noted above.

The Court "will not reach the remaining issues raised by [Carlin] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made."). The Court notes, however, that the ALJ's finding that Dr. Schirck's "primary care records" are "largely illegible," Docket Item 7 at 37, is troubling, especially in light of the fact that the opinion of a treating physician may well be entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2) (stating that a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record"); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (explaining that before an ALJ may give less-than-controlling weight to a treating source's opinion, "the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist"). Especially because the ALJ easily could have re-contacted Dr. Schirck to get a translation of his bad handwriting, the failure to recontact may have

been another, independent error.  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996))).

## **CONCLUSION**

In light of the above, the Commissioner's motion for judgment on the pleadings, Docket Item 14, is DENIED, and Carlin's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

    SO ORDERED.

Dated:    October 9, 2020
             Buffalo, New York

                                       */s/ Lawrence J. Vilardo*
                                       LAWRENCE J. VILARDO
                                       UNITED STATES DISTRICT JUDGE